**FILED**
OCT 31 2018
JUDGE SARA L. ELLIS
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AWS MOHAMMED YOUNIS AL-JAYAB | No. 16 CR 181<br>No. 18 CR 721<br>Judge Sara L. Ellis |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant AWS MOHAMMED YOUNIS AL-JAYAB, and his attorneys, THOMAS ANTHONY DURKIN and JOSHUA G. HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding information in the Northern District of Illinois (16 CR 181) charges defendant with knowingly providing material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B (the "Chicago Case"). The indictment filed in the Eastern District of California (2:16CR0008), and transferred to the Northern District of Illinois under Rule 20 (18 CR 721), charges defendant with knowingly providing a materially false statement to federal agents in a matter involving international terrorism, in violation of Title 18, United States Code, Section 1001(a)(2) (the "Sacramento Case").



3. Defendant has read the charges against him contained in the superseding information filed in the Chicago Case and the indictment filed in the Sacramento Case, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the superseding information filed in the Northern District of Illinois, which charges defendant with knowingly providing material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B; and the indictment filed in the Eastern District of California, which charges defendant with knowingly providing a materially false statement to federal agents in a matter involving international terrorism, in violation of Title 18, United States Code, Section 1001(a)(2).

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in the Northern District of Illinois superseding information and the Eastern District of California indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a. With respect to the Chicago Case:

Beginning no later than in or about October 2012, and continuing until on or about January 23, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly provided material support and resources, namely personnel, to a foreign terrorist organization, namely Ansar Al-Islam, knowing that the organization was a designated foreign terrorist organization, ~~and that the organization had engaged in and was engaging in terrorist activity and terrorism.~~ [initials]

More specifically, beginning in or around October 2012, defendant began planning to travel to Syria to support Ansar Al-Islam, identified Turkey as a probable transit point, and sought to arrange the finances and logistics for his travel. From in or about October 2012 through November 2013, defendant communicated with numerous friends and family members residing in the United States and outside the United States in order to arrange and finance his travel to Syria. For example, on October 13, 2012, defendant told Individual A, an associate located in Iraq, "I want to go back . . . I'll go to Turkey and enter smuggled to Syria . . . When I come, I'll call. Don't go with anyone except the Front. [. . .] Go with Ansar [Al-Islam] or with the [Al Nusra] Front only."

Defendant also communicated with friends residing inside and outside the United States about training to fight with groups in Syria. For example, on or about April 9, 2013, defendant and his Facebook friend Omar Al-Hardan, who was residing

3

in Texas, discussed their plans to travel from the United States to Syria to fight with terrorist organizations. Defendant promised to train Al-Hardan when they arrived in Syria, including on how to use firearms, such as Glock pistols and M16 assault rifles, and expressed his commitment to jihad, writing, "O God, grant us martyrdom for your sake while engaged in fighting and not retreating; a martyrdom that would make you satisfied with us."

On or about November 9, 2013, defendant flew from Chicago to Istanbul, Turkey. Soon thereafter, defendant traveled to Syria. While in Syria, defendant joined and fought with Ansar Al-Sham and Ansar Al-Islam, knowing that Ansar Al-Islam was ~~engaged in and engaging~~ a designated foreign terrorist organization in terrorist activity ~~and terrorism~~.

On or about January 23, 2014, defendant left Syria and returned to the United States, via Turkey and the United Kingdom. Upon his return to the United States, defendant's Customs Declaration Form made no mention of his travel to Turkey and Syria; "Jordan," and "U.K." were the only entries in the "countries visited" field.

At the time defendant engaged in the conduct set for the above, he knew that Ansar Al-Islam was a designated foreign terrorist organization, ~~and that the organization had engaged in terrorist activity in Syria.~~

  b.  With respect to the Sacramento Case:

On or about October 6, 2014, in the County of Sacramento, within the Eastern District of California, in a matter within the jurisdiction of the Executive Branch of the Government of the United States, to wit: the United States Citizenship and

4

Immigration Services (USCIS), a component of the United States Department of Homeland Security, defendant did knowingly and willfully make materially false, fraudulent, and fictitious statements and representations, an offense involving international terrorism.

More specifically, on or about October 6, 2014, defendant was interviewed by USCIS agents in connection with his application for adjustment of his immigration status. During that interview, when directed to list the countries he visited during the last time he traveled outside the United States in 2013-2014, defendant responded that he went to Turkey, and from Turkey he went to Britain and returned to the United States. This response was false because, as defendant then and there well knew, he traveled to Syria in 2013-2014, and his travel was not confined to Turkey and Britain before returning to the United States. When asked the purpose of that trip, defendant responded that he went to Turkey to see his grandmother and to visit the place. This response was false because, as defendant then and there well knew, he went to Turkey in order to get to Syria and did not have a grandmother living in Turkey.

In addition, during the interview, defendant denied (1) having ever been a member of or assisting a rebel group, militia, or insurgent organization; and (2) providing any type of material support to any person or group that engaged in terrorist activity. Defendant's denials were false because, as defendant then and there well knew, he was a member of and provided material support to Ansar Al-

5

Sham and the foreign terrorist organization Ansar Al-Islam while he was in Syria between on or about November 19, 2013, and on or about January 17, 2014.

Defendant statements were material to the determination by USCIS of his eligibility for immigration benefits.

## Maximum Statutory Penalties

7. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

    a. The Chicago Case carries a maximum sentence of 15 years of imprisonment, a maximum fine of $250,000, and a life term of supervised release.

    b. The Sacramento Case carries a maximum sentence of 8 years of imprisonment, a maximum fine of $250,000, and a term of supervised release of not more than 3 years.

    c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

    d. Therefore, under the charges to which defendant is pleading guilty, the total maximum sentence is 23 years of imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a life term of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

7

b. **Offense Level Calculations**.

<u>18 U.S.C. § 2339B</u>

i. The base offense level is 26, pursuant to Guideline § 2M5.3(a).

ii. The offense level is increased by 2 levels because the offense involved the provision of material support with the intent, knowledge, or reason to believe that the support was to be used to commit or assist in the commission of a violent act, pursuant to Guideline § 2M5.3(b)(1)(E).

iii. The offense level is increased by 12 levels, pursuant to Guideline § 3A1.4(a), because the offense is a felony that involved a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, United States Code, Section 2339B.

iv. The total offense level for the violation of 18 U.S.C. § 2339B is 40.

<u>18 U.S.C. § 1001(a)(2)</u>

v. The base offense level is 14, pursuant to Guideline § 2J1.2(a), because the offense involved obstruction of justice of a matter related to international terrorism.

8

vi.  Pursuant to Guideline § 2J1.2(b)(1)(C), the offense level is increased by 12 levels because defendant was convicted under 18 U.S.C. § 1001, and the statutory maximum term of 8 years of imprisonment applies because the matter relates to international terrorism.

vii.  The total offense level for the violation of 18 U.S.C. § 1001(a)(2) is 26.

Grouping

viii.  Pursuant to Guideline § 3D1.2(c), the offenses are grouped because the § 2339B charge embodies conduct that is treated as a specific offense characteristic in the guideline applicable to the § 1001(a)(2) conduct, namely because the offense involved a matter related to international terrorism.

ix.  Pursuant to Guideline § 3D1.3(a), the offense level applicable to the Group is 40, because it is the offense level for the most serious of the charges comprising the Group.

Acceptance of Responsibility

x.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero. Pursuant to Guideline § 3A1.4(b), defendant's criminal history category is VI because the offense is a felony that involved a federal crime of terrorism.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 37, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentence of 276 months' imprisonment, pursuant to Guidelines § 5G1.1(a), in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. This Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that the maximum term of imprisonment in the custody of the Bureau of Prisons in total for both charges shall be 15 years. Other than the agreed maximum term of imprisonment, the parties have agreed that each party is free to recommend whatever sentence it deems appropriate; the Court remains free to impose the sentence it deems appropriate, subject to the maximum total term of 15 years of imprisonment. If the Court accepts the agreed maximum term of incarceration set forth herein, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to the agreed maximum term of incarceration set forth herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

12. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

13. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability the Chicago Case and the Sacramento Case.

14. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Offices for the Northern District of Illinois and the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

15. After sentence has been imposed on the Chicago Case and the Sacramento Case, to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment filed in the Northern District of Illinois.

## Waiver of Rights

16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at

13

trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

   b. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

     i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

     ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

     iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each charge separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to each charge.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    c.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this,

15

defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

17. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the

nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient

evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

21.	Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

22.	Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

23. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

24. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

limitations between the signing of this Agreement and the commencement of such prosecutions.

25. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

26. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 10/31/18

_____
JOHN R. LAUSCH, JR.
United States Attorney

_____
BARRY JONAS
SHOBA PILLAY
Assistant U.S. Attorneys

_____
MCGREGOR SCOTT
United States Attorney
Eastern District of California

_____
AWS MOHAMMED YOUNIS AL-JAYAB
Defendant

_____
THOMAS ANTHONY DURKIN
JOSHUA G. HERMAN
Attorneys for Defendant

20